**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| ASHER BRONSTIN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FAST BUSINESS FINANCIAL LLC,<br><br>Defendant. | No. 2:26-cv-05835-MWC-AS<br><br>Honorable Judge Michelle Williams Court<br><br>FIRST AMENDED CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

**FIRST AMENDED CLASS ACTION COMPLAINT**

1. Asher Bronstin ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Fast Business Financial LLC ("Fast Business" or "Defendant").

2. This Class Action arises from Defendant's persistent disregard for federal law—specifically, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3. Defendant uses unlawful and invasive telemarketing tactics to drum up business. And Defendant flooded Plaintiff with invasive telemarketing solicitations in clear violation of the TCPA.

4. Now, Plaintiff brings this Class Action on behalf of himself, and all others harassed by Defendant and its unlawful telemarketing tactics.

## PARTIES

5. Plaintiff, Asher Bronstin, is a natural person and a citizen of the United States.

6. Defendant Fast Business is a Limited Liability Company formed and headquartered in California, and with its principal place of business at 6420 Wilshire Blvd #860, Los Angeles, California 90048.

## JURISDICTION AND VENUE

7. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA, 47 U.S.C. § 227.

8. This Court has personal jurisdiction over Defendant because it is headquartered in California, regularly conducts business in California, and has sufficient minimum contacts in California.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Defendant is a resident of this District

## BACKGROUND

***The Telephone Consumer Protection Act***

10. Congress enacted the Telephone Consumer Protection Act ("TCPA") to combat "the proliferation of intrusive, nuisance calls to consumers and businesses from telemarketers." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (internal quotation omitted).

11. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of

complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 591 U.S. 610, 613 (2020).

12. "The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

13. As used herein, "TCPA" refers to both the federal statute 47 U.S.C. § 227 *et seq.* and its implementing regulations 47 C.F.R. § 64.1200 *et seq.*

14. The TCPA establishes a "private right of action" whereby persons can seek both injunctive and monetary relief. 47 U.S.C. §§ 227(b)(3), (c)(5).

15. For damages, the TCPA provides "$500 in damages for each such violation[.]" 47 U.S.C. §§ 227(b)(3), (c)(5). However, the TCPA provides treble damages of $1,500 for each "willful" or "knowing" violation. *Id.*

16. Telemarketing is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in,

property, goods, or services, which is transmitted to a person." 47 C.F.R. § 64.1200(f)(13).

17. The term "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15).

18. The TCPA prohibits the use of artificial or prerecorded voices when calling cellular telephone numbers. 47 U.S.C. § 227(b)(1)(A)(iii).

19. The TCPA prohibits calling any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. §§ 64.1200(c)(2). Notably, "[s]uch do-not-call registrations must be honored indefinitely[.]" *Id*.

20. For such violations, the TCPA provides a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5).

***Plaintiff Asher Bronstin***

21. Plaintiff is an individual and a "person" under the meaning of 47 U.S.C. § 153(39).

22. Plaintiff's residential cellular telephone number is (760) XXX-XXXX (the "cellular telephone number").

23. To avoid unsolicited telemarketing calls, Plaintiff's number has been on the National Do-Not-Call Registry on November 8, 2004, and the Plaintiff personally attempted re-registration on April 30, 2024, but was informed that the number has been on the Registry since the November 8, 2004 date. Since then, Plaintiff has not removed his telephone number from the National Do-Not-Call

Registry.

24. At all times relevant, Plaintiff uses his cellular telephone number for personal, residential, and household purposes (such as calling friends, family, and scheduling personal appointments).

25. At all times relevant, Plaintiff has not used his cellular telephone number for business purposes.

26. At all times relevant, Plaintiff has not associated his cellular telephone number with any business.

27. Plaintiff has been the sole owner (i.e., user) of his cellular telephone number since approximately April 2024, when he reacquired the number after previously having used it earlier in life.

28. During this time period, Plaintiff has been the sole remunerator (i.e., payer) for any bills arising from his cellular telephone number.

29. Plaintiff has never received a reimbursement from any business for his cellular telephone number.

30. Plaintiff has never taken a business-related tax-deduction for his cellular telephone number.

31. Plaintiff is not a current or former customer of Defendant.

32. Plaintiff has never had a business relationship with Defendant.

33. Plaintiff never provided his cellular telephone number to Defendant.

34. Plaintiff has never consented to receive the alleged telephone solicitations from Defendant.

***Defendant Engages in Telemarketing***

35. Defendant "provides funding to small businesses in minutes," and "leverages data generated through business activity such as accounting data, online sales, shipping and dozens of other sources to understand performance and deliver

fast, flexible funding in real time."[1]

36. Simply put, Defendant sells its services of business loans, capital funding, cash advances, direct lending, etc.

37. Screenshots of Defendant's website[2] and LinkedIn[3] are provided below.







---

[1] *Fast Business Financial Overview*, LINKEDIN, https://www.linkedin.com/company/fast-business-financial/ (last visited Feb. 10, 2026).

[2] *About Us*, FAST BUSINESS FINANCIAL, https://fastbusinessfinancial.com/about-us/ (last visited Feb. 10, 2026).

[3] *Fast Business Financial Overview*, LINKEDIN, https://www.linkedin.com/company/fast-business-financial/ (last visited Feb. 10, 2026).

38. Notably, in Defendant's industry, telemarketing is a widespread and standard practice.[4] Indeed, the Bureau of Labor Statistics has reported that the "Credit Intermediation and Related Activities" industry has one of the highest levels of telemarketing.[5]

39. To sell its services, Defendant (or its third-party agents) engages in telemarketing campaigns.

40. Defendant has already received numerous complaints about its unlawful telemarketing practices.

41. Screenshots of consumer complaints to the Better Business Bureau[6] and on Yelp[7] are provided below.



Date: 06/20/2024

I keep getting faxes from this company and they are using a different name it's cross country loans out of LA. I have told them repeatably not to send my business a fax. We don't do any business with companies from other states. They have been warned repeatedly about sending faxes. Today I spoke with [redacted]; he assured me he wouldn't have another sent. I also told him they would go to the [redacted] if I received another. Faxes work like phone calls I'm on the do not call list which means simply DO NOT CALL. I understand they are in [redacted] but the law is the same there. 1 more fax and it is on for the [redacted] per fax I've got 6 on file try it and see what happens.



Jjj A.
Los Angeles, CA
0 1 0

Jan 9, 2025

These guys constantly call and harrass people over the phone. I asked them to take my number off and they refused to do so. Probably sketch as hell

Helpful 0 Thanks 0 Love this 0 Oh no 0

---

[4] *Occupational Employment and Wage Statistics: Telemarketers*, U.S. CENSUS BUREAU (May 2023) https://www.bls.gov/oes/2023/may/oes419041.htm.

[5] *Id.*

[6] *Occupational Employment and Wages, May 2023*, U.S. BUREAU OF LABOR STATISTICS, https://www.bls.gov/oes/2023/may/oes419041.htm (last visited Feb. 10, 2026).

[7] *Fast Business Financial*, YELP, https://www.yelp.com/biz/fast-business-financial-los-angeles-2 (last visited Feb. 10, 2026).

***Defendant violated the TCPA***

42. As explained below, Defendant violated the TCPA numerous times.

43. Defendant first contacted Plaintiff by telephone in May 2024. Since then, Plaintiff has received at least ten (10) calls from Defendant, all originating from the same telephone numbers: (813) 954-6330; (404) 882-3304; (786) 257-1312; (404) 737-8306; (813) 771-0376; (706) 262-8540; and (407) 412-7052.

44. Defendant placed numerous telephonic solicitations to Plaintiff's cellular telephone number, including, on information and belief, the following:

a. May 23, 2024, at 9:19 a.m. from (813) 954-6330.

b. May 23, 2024, at 9:20 a.m. from (813) 954-6330.

c. June 25, 2024, at 9:32 a.m. from (404) 882-3304.

d. July 3, 2024, at 10:18 a.m. from (786) 257-1312.

e. July 18, 2024, at 9:36 a.m. from (404) 737-8306.

f. July 18, 2024, at 11:04 a.m. from (404) 737-8306.

g. August 22, 2024, at 9:00 a.m. from (813) 771-0376.

h. September 11, 2024, at 9:06 a.m. from (706) 262-8540.

i. September 25, 2024, at 9:01 a.m. from (407) 412-7052.

j. September 25, 2024, at 9:32 a.m. from (407) 412-7052.

45. Each of the calls were ringless and went directly to voicemail. The voicemails contained pre-recorded messages.

46. When Plaintiff first returned Defendant's call, a sales representative provided Plaintiff with an email address with the domain fastbusinessfinancial.com and attempted to solicit Plaintiff to purchase its services.

47. On subsequent return calls, Plaintiff encountered an automated attendant that promoted and attempted to market the loan being offered. The telephone call featured a crisp and articulate voice—which noticeably lacked the

typical pauses, missteps, and "filler words" (e.g., "um") that characterize normal human speech. Thus, on information and belief, the telephone calls in question used a prerecorded or artificial voice.

48. In other words, Defendant called Plaintiff's cellular telephone number and attempted to solicit Plaintiff to purchase its services.

49. The aforementioned telephone solicitations to Plaintiff were unwanted, nonconsensual encounters, as Plaintiff never provided his consent or requested the calls.

50. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed.

51. On information and belief, Defendant will continue to place numerous telephonic solicitations to Plaintiff and Class Members.

## CLASS ACTION ALLEGATIONS

52. Plaintiff brings this Class Action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of the following:

> **National Do-Not-Call Registry Class**: All persons in the United States (1) whose telephone numbers were on the National Do-Not-Call Registry for at least 31 days (2) but then received two or more telephone calls from, or on behalf of, Defendant (3) during a 12-month period and (4) within four years prior to the commencement of this litigation and up until the date of trial.

> **Prerecorded Voice Class**: All persons in the United States (1) whose telephone number (2) received one or more telephone calls from, or on behalf of, Defendant (3) during a 12-month period, (4) within four years prior to the commencement of this litigation and up until the date of trial, and (5) when the telephone call used a prerecorded or artificial voice.

53. Together, the various classes are referred to as the "Class."

54. Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

55. Plaintiff reserves the right to amend the Class definition.

56. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

57. **Ascertainability**. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. Specifically, all members of the proposed Class can be ascertained through analysis of Defendant's phone records.

58. **Numerosity**. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least several thousand members. After all, telemarketing campaigns necessarily involve communication with large groups of people.

59. **Typicality**. Plaintiff's claims are typical of those of Class Members because all such claims arise from Defendant's unlawful telemarketing practices.

60. **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class Members' interests. And Plaintiff's counsel has substantial experience in complex class action litigation and an expertise in TCPA litigation.

61. **Commonality and Predominance**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any

questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer, *inter alia*:

a. whether Defendant violated the TCPA;

b. whether Defendant violated the TCPA willfully and knowingly;

c. whether Plaintiff is entitled to statutory damages;

d. whether Plaintiff is entitled to treble damages;

e. whether Defendant should be enjoined from further TCPA violations.

62. **Superiority**. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

## FIRST CAUSE OF ACTION

**Telephone Consumer Protection Act**

**Violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)**

**(On Behalf of Plaintiff and the Class)**

63. Plaintiff incorporates by reference all other paragraphs as if fully set

forth herein.

64. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, by making telemarketing solicitations, except for emergency purposes, to the Plaintiff and the National Do-Not-Call Class despite their numbers being on the National Do-Not-Call Registry.

65. Defendant violated the TCPA willfully or knowingly.

66. Plaintiff and National Do-Not-Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone call.

67. Plaintiff and National Do-Not-Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and National Do-Not-Call Class Members.

## SECOND CAUSE OF ACTION

### Telephone Consumer Protection Act

### Violations of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(d)

### (On Behalf of Plaintiff and the Prerecorded Call Class)

68. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

69. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, by making telephonic solicitations, except for emergency purposes, to the Plaintiff and the Prerecorded Call Class while using a prerecorded and/or artificial voice.

70. Defendant violated the TCPA willfully or knowingly.

71. Plaintiff and Prerecorded Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone call.

72. Plaintiff and Prerecorded Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and Prerecorded Call Class Members.

## PRAYER FOR RELIEF

Plaintiff and Class Members respectfully request judgment against Defendant and that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B. Awarding statutory damages to Plaintiff and Class Members;

C. Providing the injunctive relief requested herein; and

D. Granting such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.

DATED this 10th day of September, 2026.

Respectfully submitted,

*/s/ Carly M. Roman*
Carly M. Roman (SBN 349895)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@straussborrelli.com

*Counsel for Plaintiff and Putative Class*

**CERTIFICATE OF SERVICE**

I, Carly M. Roman, hereby certify that on September 10, 2026, I caused the foregoing to be electronically filed with the Court using the Court's CM/ ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATED this 10th day of September, 2026.

Respectfully submitted,

*/s/ Carly M. Roman*

Carly M. Roman (SBN 349895)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@straussborrelli.com

*Counsel for Plaintiff and Putative Class*